**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| VICTOR J. MARTINEZ-HERRERA, | ) | NO. 04-00183  (Mc) |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OF DECISION |
| v. | ) | AND ORDER IN A SOCIAL |
| | ) | SECURITY CASE |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, VICTOR J. MARTINEZ-HERRERA, filed the present action for review of a final determination of the Commissioner of Social Security (the "Commissioner") that the plaintiff is not disabled and not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") disability benefits.  For the reasons set forth below, the court finds that the decision of the Commissioner is supported by substantial evidence.  The matter is, therefore, affirmed.

**BACKGROUND**

The plaintiff filed applications for DIB and SSI disability benefits under the Social Security Act (the "Act") on March 9, 2001. [Administrative Record ("AR") 146-48, 290-93.]  The Commissioner

denied the applications [AR 104-08], and at the plaintiff's request, an administrative hearing was held before Administrative Law Judge Zane A. Lang (the "ALJ") on June 27, 2002. [AR 42-59.] A supplemental hearing was held on December 4, 2002 [AR 62-101], and on February 4, 2003, the ALJ filed a decision concluding that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision [AR 24-35]. The Appeals Council initially granted the request for review of the ALJ's decision. However, the Appeals Council subsequently vacated its prior notice and reinstated the request for review, which it ultimately denied. [AR 10-13, 296-97, 298-99.] The decision of the ALJ, therefore, stands as the final decision of the Commissioner.

Thereafter, the plaintiff filed the present action. The plaintiff and the Commissioner have consented to proceed before a United States Magistrate Judge. The parties have entered into a Joint Stipulation setting forth their arguments.

### STANDARDS OF REVIEW

The court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a whole; or (b) the Commissioner applied an improper legal standard. See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human Services, 803 F.2d 1071, 1072 (9th Cir. 1986). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). "Substantial evidence" is evidence a "reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 402; Gordon v.

1  <u>Secretary of Health and Human Services</u>, 803 F.2d at 1072.

2      This court must review the record as a whole and consider adverse

3  as well as supporting evidence.   See <u>Green v. Heckler</u>, 803 F.2d 528,

4  529-30 (9th Cir. 1986).   Where evidence is susceptible of more than

5  one rational interpretation, the court must sustain the Commissioner's

6  decision.   See <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir.

7  1984).

8                **THE FIVE-STEP SEQUENTIAL EVALUATION**

9      The Commissioner has established a five-step sequential

10  evaluation for determining whether a person is disabled.   First, the

11  Commissioner determines whether the person is engaged in "substantial

12  gainful activity."   If so, the Commissioner denies disability

13  benefits.   Second, if the person is not so engaged, the Commissioner

14  determines whether the person has a medically severe impairment or

15  combination of impairments.   If the person does not have a severe

16  impairment or combination of impairments, the Commissioner denies

17  benefits.   Third, if the person has a severe impairment, the

18  Commissioner determines whether the impairment meets or equals one of

19  a number of "listed impairments."   If the impairment meets or equals a

20  "listed impairment," the Commissioner conclusively presumes that the

21  person is disabled.   Fourth, if the impairment does not meet or equal

22  the "listed impairments," the Commissioner determines whether the

23  impairment prevents the person from performing past relevant work.   If

24  the person can perform past relevant work, the Commissioner denies

25  benefits.   Fifth, if the person cannot perform past relevant work, the

26  burden shifts to the Commissioner to show that the person is able to

27  perform other kinds of work.   The person is entitled to disability

28  benefits only if he or she is unable to perform other work.   See 20

C.F.R. § 404.1520 and 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

## **FINDINGS OF THE ALJ**

The plaintiff was born August 21, 1955. [AR 146.]  The plaintiff has twelve years of education in Mexico [AR 49, 167] and is unable to communicate in English [AR 34, 49].  The plaintiff's past relevant work experience includes work as a machine operator and taxi driver. [AR 25, 162.]  The plaintiff alleges that he has been unable to work since March 11, 2000, because of knee problems, shoulder problems, and back pain.  [AR 146, 161.]

The ALJ found that the plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  The ALJ found that the plaintiff had medically determinable impairments consisting of bilateral tears of the medial menisci.  The ALJ found that the plaintiff's impairments were severe but that the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.  The ALJ found that the plaintiff's allegations concerning his limitations were not totally credible and that the plaintiff retained the residual functional capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for four hours in an eight-hour workday; sit without limitation; occasionally use foot controls with the lower extremities; and occasionally balance, stoop, crouch, and kneel.  However, the plaintiff could not climb or crawl, and he should avoid more than occasional exposure to unprotected heights.

The ALJ determined that although the plaintiff's limitations did not allow him to perform the full range of light work, the plaintiff,

nevertheless, retained the residual functional capacity to perform a significant range of light work.  The ALJ found that the plaintiff could not perform any of his past relevant work but that considering the plaintiff's age, his education and his vocational background along with his residual functional capacity, and using Rule 202.16 as a framework for decision-making, there were a significant number of jobs in the national economy that the plaintiff could perform such as the jobs of assembler (button and notion), DOT 734.687-018, which is sedentary and unskilled, of which there are 170,000 jobs nationally and 9,000 jobs locally, and sticker (button and notion), DOT 734.687-090, which is sedentary and unskilled, of which there are 36,000 jobs nationally and 3,200 locally. The ALJ, therefore, concluded that the plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision.  [AR 34-35.]

### THE PLAINTIFF'S CONTENTIONS

The plaintiff contends that the ALJ erred by applying the wrong Grid Rule.

### DISCUSSION

Once the plaintiff has established that he cannot return to his past relevant work, the burden shifts to the Commissioner to show that there are significant numbers of jobs which plaintiff can still perform.  The Commissioner can meet this burden in two ways: by the taking of vocational expert testimony or by reliance upon the Medical-Vocational Guidelines ("Grids") in Appendix 2, Subpart P, Regulations No. 4.  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

The Grids are "a short-hand method for determining the availability and numbers of suitable jobs for a claimant. . . . The grids categorize jobs by their physical-exertional requirements and

consist of three tables," one for sedentary work, one for light, and one for medium.  "Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, e.g., fifty years old, limited education, and unskilled work experience, the grids direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category. . . ."  Id.

However, "[w]hen they do not adequately take into account claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted."  Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002), citing Moore v. Apfel, 216 F.3d 864, 869-70 (9th Cir. 2000).

The plaintiff's residual functional capacity is not quite the full range of light work.[1]  However, it is more than sedentary.[2]

---

[1]Light work is work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [an individual] must have the ability to do substantially all of these activities. If someone can do light work, [the Commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

[2]Sedentary work is defined as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a) and 416.967(a).

Thus, the plaintiff's residual functional capacity is somewhere in between sedentary work and light work.  Accordingly, the rules do not adequately describe the plaintiff's limitations and cannot be used to direct a conclusion of "disabled" or "not disabled."

Because the Grids could not be used to direct a conclusion, the ALJ used Grid Rule 202.16 only as a "framework" for decision-making," he properly relied upon the testimony of a vocational expert [Thomas, 278 F.3d at 960], and he cited examples of other work which the plaintiff, with the plaintiff's particular residual functional capacity, could still perform [20 C.F.R. §§ 404.1569a(d) and 416.969a(d)].

Rule 202.16 directs that a younger individual[3] who is illiterate or unable to communicate in English with no work experience or an unskilled work background and who is limited to light work be found "not disabled."

The plaintiff, on the other hand, cites the testimony of the vocational expert at the supplemental hearing ("second vocational expert") that "at best, Mr. Martinez-Herrera could only perform sedentary work" [AR 97], and he argues that, therefore, Rule 201.17[4] should have been used to direct a conclusion of "disabled."  Rule 201.17 is applicable to a younger individual between the ages of 45-49, who is illiterate or unable to communicate in English, who has

---

[3]An individual under age fifty is considered a "younger person." 20 C.F.R. §§ 404.1563(c), 416.963(c).

[4]The plaintiff has mistakenly cited Rules 202.19 and 201.19 instead of Rule 201.17 at various points in his argument. [Joint Stipulation at 5.] The court assumes that these are typographical errors.  Neither of these rules would lead to a conclusion of "disabled."

either no work background or an unskilled work background, and who is limited to sedentary work.  Such an individual under Rule 201.17 would be found "disabled."  While the plaintiff acknowledges that his work background is not unskilled, the plaintiff cites Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) for the proposition that because he has no transferable work skills, in applying the Grids, his vocational background is the equivalent of an unskilled background. [Joint Stipulation at 5-6.]

However, the fact that the plaintiff is unable to perform the full range of light work does not mean that the plaintiff is limited to sedentary work.  Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1279 (9th Cir. 1987).[5]  Nevertheless, relying on the vocational expert's testimony, the plaintiff contends that under Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995), "since the ALJ accepted the [second] vocational expert's testimony that only identified sedentary work, he is bound by that finding." [Joint Stipulation at 11.]

---

[5]Gamer argued that because he, like the plaintiff, was unable to perform the full range of light work, his age required that he be found disabled.  As in the plaintiff's case, if Gamer were capable of a full range of light work, he would be found "not disabled" under the Grids.  On the other hand, if Gamer were limited to sedentary work, the Grids would direct a conclusion of disabled.  However, the Court noted that "{t}he regulations do not state that a person of [Gamer's] age who cannot perform all types of light work is disabled. Nor do they state that a person unable to perform all types of light work is limited to sedentary work. The grids are to be used as guidelines in appropriate cases. [Citations omitted.]  It was, therefore, permissible for the ALJ to conclude that a person [of Gamer's] age who can perform some types of light work is not disabled."  In Gamer, just as in the plaintiff's case, the ALJ called a vocational expert to testify and found, in accordance with the vocational expert's testimony, that there existed other work existing in significant numbers in the national economy which Gamer could perform. Gamer, 815 F.2d at 1279.

However, unlike in Distacio, the second vocational expert did not identify only sedentary work.  In his decision, the ALJ unfortunately named only the sedentary jobs cited by the second vocational expert as examples of work which the plaintiff could perform. (A.R. 35.) However, the second vocational expert testified to light jobs as well, and the ALJ did not indicate that the sedentary jobs were the <u>only</u> jobs which the plaintiff could perform.

Despite the second vocational expert's testimony that the only entry-level jobs which the plaintiff could perform "would probably be at the sedentary level," the first job she named was in the light category.  After positing his first hypothetical question, which included all of the limitations he subsequently found, the ALJ inquired:

Q.   Okay.  Could a hypothetical individual with these limitations perform any of the Claimant's past work? Let's not include jewelry salesperson.

A.   Then the answer's no. . . .

Q.   Okay.  Any entry level work?

A.   Yes, but I think they would probably be at the sedentary level –

Q.   Okay.

A.   – such as small products assembly, 706 –

Q.   Wait a minute.  Assembler.  706?

A.   684 –

Q.   Uh-huh.

A.   – 022.

Q.   Uh-huh.

A.   <u>Light unskilled</u>. (Emphasis added.)

1    Q.    I thought you said it was at the sedentary level.

2    A.    You're right, but these can be performed – well, okay.

3          Let me just give you strictly sedentary then.

4    [AR 97.]

5       Because of the ALJ's interruption and diversion of the focus to

6    sedentary work, no testimony was taken at that time concerning the

7    number of small products assembly jobs which existed in the local or

8    national economies.

9       This question, however, was answered when the ALJ posited his

10   second hypothetical question to the second vocational expert:

11   Q.    No.  Okay.  Let's see.  And if you have a hypothetical

12         individual Claimant's age, education, work experience,

13         cannot speak, understand, read or write English, and

14         this hypothetical individual can lift 20 pounds

15         occasionally, 10 pounds frequently, stand and/or walk

16         six hours out of an eight-hour day, no limits on

17         sitting, and no kneeling, squatting, which would be

18         crouching.  Is that right?  No kneeling, crouching, or

19         crawling.  Could this hypothetical individual do any of

20         the Claimant's work, past work?

21   A.    You're not give me any lower –

22   Q.    Oh.  Oh yeah.  Wait a minute.  And again occasional use

23         of the lower extremities pushing and pulling.

24   A.    The answer's no.

25   Q.    Okay.  What about entry level work?

26   A.    Now, we have the small products assembler, 706.684-022,

27         light –

28   Q.    That's light SVP –

1    A.   SVP of 2.

2    Q.   Uh-hum.

3    A.   19,000 locally.  480,000 nationally.

4  [AR 98-99.]

5        This testimony, therefore, indicates that the plaintiff, with his

6  residual functional capacity as assessed, can perform the job of small

7  products assembler, D.O.T. 706.684-022, which is light.  This

8  testimony also establishes that there are a total of 19,000 small

9  products assembler jobs in the local economy if the plaintiff were

10  capable of being on his feet for six hours out of an eight-hour day.

11        What is not known, however, is the number of such jobs with the

12  standing and/or walking limited to four hours instead of six. However,

13  that question was answered by the vocational expert at the first

14  hearing ("first vocational expert"):

15    Q.   Okay.  And if you assume a hypothetical individual

16         again can't speak, read or write, or understand

17         English, lift 20 pounds occasionally, 10 pounds

18         frequently, stand and/or walk four hours out of an

19         eight-hour day, with a sit/stand option, sit six hours

20         out of an eight-hour day, could this hypothetical

21         individual perform any of the claimant's past relevant

22         work?

23    A.   No.  I don't think so.

24    Q.   Entry level work?

25    A.   Yes.  This hypothetical person could perform a job such

26         as a small products assembler.  It is light and

27         unskilled.  SVP 2.  DOT number 706.684-022.  The

28         regional numbers are 20,337.

Q.    20,337?

A.    Yes.  And the national numbers are 480,986.

Q.    Uh-huh.  Do you have another one?

A.    This hypothetical person could also perform the job of

a hand packer, which is also light and unskilled.  SVP

2.  It's at DOT number 559.687-074.  The regional

numbers in this case are 4,043, and the national

numbers are 110,317.

[AR 55.]

This court recognizes that the hypothetical question posed to the first vocational expert is not identical to the residual functional capacity assessment ultimately found.  In some ways, however, this hypothetical question posed to the first vocational expert is even more restrictive because it provides a sit/stand option and limits the plaintiff's sitting to six hours.  It also does not include the postural and environmental limitations ultimately found, but these were adequately included in the hypothetical question to the second vocational expert.[6]

Thus, the testimony of two vocational experts indicates that an individual with the plaintiff's background can perform the entry-level

---

[6]In addition to the limitations posed by the ALJ to the first vocational expert, the ALJ ultimately limited the plaintiff to occasional use of foot controls in both lower extremities, occasional squatting or crouching, occasional balancing, stooping, and kneeling, occasional exposure to unprotected heights, and no crawling and climbing.  The first hypothetical question to the second vocational expert incorporated these findings.  Moreover, the D.O.T. indicates that climbing, balancing, stooping, kneeling, crouching, crawling are not required of the job of small products assembler.  Likewise, there is no exposure to "high exposed places."  Nothing in the D.O.T. description of the job moreover contradicts the second vocational expert's testimony concerning the limitation to only occasional use of foot controls.

job of small products assembler, D.O.T. 706.684-022, which is in the light category, and which exists in significant numbers in the local and national economies.  Substantial evidence, therefore, supports the ALJ's conclusion that there is other work which the plaintiff can perform.  The ALJ properly utilized the grids as a framework in conjunction with the testimony of a vocational expert.  See Moore v. Apfel, 216 F.3d 864, 870 (9th Cir. 2000).  The ALJ's failure to include the light job that the plaintiff could perform as an example of other work which the plaintiff can do, if error, was harmless error and "does not negate the validity of the ALJ's ultimate conclusion." Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).

**CONCLUSION**

After careful consideration of the complaint, joint stipulation of the parties, the transcript of the record, and in accordance with the foregoing discussion, the magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.


Dated: October 13, 2005


                                        /s/
                                   JAMES W. McMAHON
                                   United States Magistrate Judge

- 13 -